thought, he says, by the board, that no additional authority was necessary in order to enable him to make the indorsement, and it was made accordingly. If you believe this, then I think there is no doubt that there was a valid technical indorsement made on the note, because if his statement is true, it was done with the knowledge and consent of the board of directors, and in fact it would have been a breach of faith for the board of directors to withhold the indorsement from the note, if that were necessary, because they had transferred the note for which they had received value in cash, and it was right that they should give to the plaintiff all the power and control over the note which they themselves had.

You will perceive, therefore, that according to the view which the court takes in this case, the plaintiff was a bona fide holder of the note, and can recover, if he did not know that there were any false or fraudulent representations made at the time, or previous to its execution, and which caused its execution, and if he did not know of the existence of the contract or agreement given by the railroad company at the time that it was executed, and if he paid value for it. The reason of this is apparent. It is said to be a hard case for the defendant, as the stock has become worthless, that he should pay his money for nothing. That may be true, but the question is, who should suffer a loss in a case like this? Admitting that he has been imposed upon, and as between the original parties themselves he ought not to pay it, still if he or the plaintiff has to suffer, the rule is that by executing the note and enabling the company to put it in circulation and raise money on it, the defendant must suffer the loss, for if he had never executed the note, or caused it to be put in circulation, the plaintiff never would have advanced his money on it. That is the reason of the rule of law on the subject, and it is founded, it seems to me, on the plainest principles of justice and equity.

Therefore you will see that the case turns, so far as you are concerned, upon this, viz: whether there is any evidence in the case which shows that the plaintiff knew that there were misrepresentations made (if there were misrepresentations of the character that I have stated) and whether the plaintiff knew of the existence of the agreement that was made at the time by the railroad. If he did not, and if there was no fact brought to his knowledge which would cause a prudent man to make inquiry, then I think that the plaintiff is entitled to recover. If, however, he knew of the existence of any fraud —if he knew of this contract and its terms— then he is not a bona fide purchaser without notice, but he takes the note and mortgage subject to the equities which exist between the parties, and the defendant would not be liable. The other questions raised by the defendant I shall reserve for future consideration, if it becomes necessary. If you shall find for the plaintiff, of course he is entitled to recover the amount of the note with interest from the last payment, which was the 10th day of May, 1857.

Verdict for plaintiff.

[NOTE. Defendant moved for a new trial. The motion was overruled, and judgment entered upon the verdict.

[From statement of case by Mr. Justice Swayne in the supreme court, see post.]

NOTE [from original report]. This case was carried by writ of error to the supreme court and the judgment below affirmed, the position and reasoning of Judge Drummond being adopted as the views of the supreme court. [Laber v. Cooper] 7 Wall. [74 U. S.] 565. A bona fide holder of bonds may enforce them, independent of any equities between the original parties. Morris Canal & Banking Co. v. Fisher, 1 Stock. [9 N. J. Eq.] 667; Finnegan v. Lee, 18 How. Pr. 186; Bank of Rome v. Village of Rome, 19 N. Y. 20. To the same effect, see State of Illinois v. Delafield, 8 Paige, 527; on appeal, 2 Hill, 159; Mechanics' Bank v. New York & N. H. R. Co., 3 Kern. [13 N. Y.] 625; cited and approved in Bank of Rome v. Village of Rome, 19 N. Y. 20. That fraudulent representations, made at the time of subscription do not constitute a good defense, see opinion of Hopkins, J., in Upton v. Hansbrough [Case No. 16,801] Feb. 1873, to appear in subsequent volume of these reports.

[NOTE. In addition to the adoption of the views expressed by the circuit court, the supreme court further held, as to the additional grounds assigned as error, that an irregularity consisting in a failure to reply to a plea was cured by the trial and verdict; moreover, the objection could not be raised for the first time in the supreme court; and, furthermore, section 32 of the judiciary act forbids a judgment to be reversed for any want of form in the proceedings except such as shall have been specially pointed out by demurrer. Also, that an objection that the verdict was not responsive to the issues submitted was too late for the like reasons, and that an exception to the overruling of an objection to certain testimony could not be considered, because not distinctly taken and placed upon the record. Laber v. Cooper, 7 Wall. (74 U. S.) 565.]

---

## Case No. 3,199.

### COOPER v. MATTHEYS.

[See Case No. 3,200.]

---

## Case No. 3,200.

### COOPER v. MATTHEYS.

[5 Pa. Law J. 38; 8 Law Rep. 413.]

Circuit Court, E. D. Pennsylvania. May, 1842.

ENJOINING INFRINGEMENT OF PATENT—LACHES.

1. An injunction will not be granted to restrain the violation of a patent or copy-right, where the defendant has been in possession a length of time, claiming by an adverse title, until the right is first settled at law; nor will it be granted in any case where the party applying for it has not shown good faith, conscience, activity and diligence, nor where there is any doubt or uncertainty as to the facts.

2. If, on a motion for an injunction, there appears from the affidavits of the parties, or witnesses, such a repugnancy in point of fact as makes it necessary to decide as to the rela-